# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DIESEL S.P.A.,<br><br>       Plaintiff,<br><br>v.<br><br>THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A,<br><br>       Defendants. | Case No.<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Diesel S.p.A. ("Diesel" or "Plaintiff") brings this action against the Individuals, Corporations, Limited Liability Companies, Partnerships and Unincorporated Associations identified in Schedule A attached hereto (collectively, "Defendants"). In support of this Complaint, Plaintiff alleges as follows:

### I. JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)-(b), and 28 U.S.C. § 1331.

2. This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets consumers in the United States, including in Illinois and in this District through acts of counterfeiting and trademark infringement, as described herein.

4. Specifically, Defendants, operating under cover of assumed names and aliases, manage Internet businesses, online marketplaces, profiles, storefronts, and/or accounts (collectively referred to as "Defendant Internet Stores"). Through these Defendant Internet Stores, Defendants offer for sale and sell to consumers in Illinois and within this District products that display, or are marketed using, counterfeit or infringing versions of Plaintiff's trademarks. Schedule A lists the aliases utilized by Defendants ("Defendant Aliases") and the URLs corresponding to each Defendant Internet Store.

5. Each of the Defendants has targeted, continues to target, and sough sales from Illinois residents by setting up and operating internet stores that offer shipping to the United States, including to addresses in Illinois; accepted payment and continue to accept payment in U.S. dollars and/or funds from U.S. bank accounts; and, on information and belief, have sold and continue to sell products using infringing and/or counterfeit versions of Plaintiff's federally registered trademarks to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in Illinois.

## II. INTRODUCTION

6. Plaintiff files this action against online infringing counterfeiters who, without consent, unlawfully trade upon Plaintiff's reputation and goodwill by using unauthorized, infringing, counterfeit, and/or copied versions of Plaintiff's Diesel trademarks (the "Asserted Trademarks"), to offer for sale, sell, distribute, and/or advertise the infringing and/or counterfeit

products (the "Infringing/Counterfeit Products").

7. The United States Patent and Trademark Office ("USPTO") has granted Plaintiff numerous registrations on the principal register for the Asserted Trademarks (the "Trademark Registrations") covering the use of various clothing items including shirts under International Class 25. The Trademark Registrations include U.S. Reg. Nos. 1,498,698; 1,564,710; 2,376,399; 3,225,322; and 7,561,615. The Trademark Registrations are valid, active, and in full force and effect. True and correct copies of the federal trademark registration certificates for the Asserted Trademarks are attached hereto as **Exhibit 1**.

8. Defendants have created and operated the Defendant Internet Stores under one or more Defendant Aliases. The Defendants are offering for sale, selling, distributing, and/or advertising through the Defendant Internet Stores that are offering for sale, selling, distributing, and/or advertising the Infringing/Counterfeit Products to unwitting consumers. The Defendant Internet stores operating under the Seller Aliases share unique identifiers, including similar or identical product descriptions and similar or identical products offered for sale, which establishes a logical relationship between the Defendants and tends to suggest that the Defendants' illegal infringing and counterfeiting conduct arises out of the same transaction, occurrence, or series of transactions or occurrences.

9. Defendants, under their Defendant Aliases, attempt to avoid liability by concealing and obscuring their identities thus concealing the network of their interconnected illegal infringing and counterfeiting actions. Plaintiff files this action against the Defendants to put an end to their ongoing and persistent infringing and counterfeiting of the Plaintiff's valid and protected trademarks. Plaintiff has been and continues to be irreparably harmed through consumer confusion, dilution, and tarnishment of its valuable trademarks as a result of Defendants' actions

and seeks injunctive and monetary relief.

## III. THE PARTIES

### A. Diesel S.p.A.

10. Plaintiff is a Società Per Azioni organized and existing under the laws of Italy and is located and doing business at Via Dell'industria 4-6, 36042 Breganze (Vi), Italy.

11. Plaintiff is an internationally renowned lifestyle company, founded in 1978, which designs, manufactures, markets and distributes apparel, footwear and accessories for men, women and children, along with home and lifestyle products, among other things, under or in connection with the Asserted Trademarks, (the "Diesel Products")

12. Since its inception, Plaintiff has become a leading pioneer in denim and casual fashion, known for moving ahead of the trends in its industry. In recent years, Plaintiff has evolved into the world of premium casual wear, becoming a true alternative to the established luxury market.

13. Plaintiff produces thousands of Diesel Products every season and sells the same via its online marketplace and through thousands of points of sale worldwide, including throughout the United States and the State of Illinois.

14. Plaintiff and its Diesel Products have achieved great success over the past several decades, with millions of dollars of annual sales in the United States alone. For example, Plaintiff's annual net sales of Diesel Products in the United States and Canada was approximately $58,000,000 USD to $81,000,000 USD per year from 2020 to 2024.

15. Throughout the years, Plaintiff and its Diesel Products have been prominently featured in a number of press publications, including, but not limited to, *Details, GQ, In Style, Interview, Nylon, The New York Times, Cosmopolitan, W, Elle,* and *Esquire*.

16. Plaintiff owns all registered and unregistered intellectual property rights in and to

its Diesel brand and Diesel Products, including both registered and unregistered copyrights and trademarks.

17. Plaintiff has protected its valuable rights by filing for, and obtaining, various federal trademark registrations covering its distinctive and famous Diesel family of trademarks, including the Trademark Registrations for the Asserted Trademarks.

18. Plaintiff has spent substantial time, money and effort in building up and developing consumer recognition, awareness and goodwill in the Diesel Products and Asserted Trademarks, including through their advertising and promotional efforts. For example, Plaintiff's advertising and promotional budget targeted towards the United States and Canada was approximately between $4,000,000 USD and $6,000,000 USD each year from 2020 through 2025.

19. Plaintiff has invested a substantial amount of time, effort, and money promoting its Diesel brand including the Asserted Trademarks, and the goods and services sold thereunder, including the Diesel Products, over a prolonged period of time. As a result of Plaintiff's efforts, the quality of the Diesel Products, the extensive press and media coverage, the word-of-mouth buzz generated by consumers, and a tremendous volume of sales, the Asserted Trademarks, individually and collectively, have become prominently placed in the minds of the public. Members of the public have become familiar with the Asserted Trademarks, and have come to associate them exclusively with Plaintiff. Plaintiff has acquired a valuable reputation and goodwill among the public as a result of such associations. Indeed, the Diesel brand is famous in the United States, among other countries.

20. Plaintiff brings this action to protect its Asserted Trademarks from infringement, dilution, disparagement, and misappropriation, Plaintiff has established a comprehensive program of trademark protection, including, among other things, regularly investigating suspicious internet

stores.

**B. The Defendants**

21. Defendants are individuals and business entities who, upon information and belief, reside and/or operate in the People's Republic of China or other foreign jurisdictions, or redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

22. Defendants own and/or operate one or more of the Defendant Internet Stores under at least the Defendant Aliases identified on Schedule A and/or other seller aliases not yet known to Plaintiff. On information and belief, Defendants conduct business throughout the United States including within Illinois and in this District, through the operation of online enterprises such as the Defendant Internet Stores.

23. On information and belief, Defendants are an interrelated group of counterfeiters working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell products using infringing and counterfeit versions of the Asserted Trademarks in the same transaction, occurrence, or series of transactions or occurrences. Defendants use tactics to conceal their identities and the full scope and relatedness of their infringing operations making it virtually impossible for Plaintiff to learn Defendants' true identities and the precise interworking of their counterfeit network. If Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

### IV. DEFENDANTS' UNLAWFUL CONDUCT

24. Plaintiff has identified various marketplace profiles associated with the Defendant Internet Stores on DHGate.com. See, **Schedule A**. Defendants use the Defendant Aliases and the Defendant Internet Stores to offer for sale, sell, advertise, distribute, and import Infringing/Counterfeit Products to consumers in this District and throughout the United States.

25. According to a recent press release from the Organisation for Economic Co-operation and Development ("OECD") "counterfeit goods accounted for an estimated USD 467 billion in global trade in 2021." See, **Exhibit 2**, p. 1. OECD Secretary-General Mathias Cormann, identified the various risk associated with the current state of rampant counterfeiting stating, "Illicit trade threatens public safety, undermines intellectual property rights and hampers economic growth, and the risks could increase as counterfeiters leverage new technologies and techniques to avoid detection." *Id*.

26. The USPTO partnered with the Federal Research Division within the Library of Congress ("FRD") published a report analyzing the impact counterfeits have on domestic and international counterfeit trade. See, **Exhibit 3** (U.S. Intellectual Property and Counterfeit Goods—Landscape Review of Existing/Emerging Research). The report concluded that the harm from counterfeiters extend beyond the IP rights holders, "[C]ounterfeiting and piracy costs U.S. businesses more than $200 billion a year and leads to the loss of more than 750,000 jobs." See, **Exhibit 3**, § 3.1, p. 9.

27. The Department of Homeland Security ("DHS") found that counterfeiters who sell their infringing products through online marketplaces commonly owned and/or operated several online marketplace profiles that appear unrelated:

> Platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, nor to link one seller profile to other profiles owned by that same business, or by related businesses and owners. In addition, the party that appears as the seller on the invoice and the business or profile that appears on the platform to be the seller, may not always be the same. This lack of transparency allows one business to have many different profiles that can appear unrelated.

See, **Exhibit 4**, p. 39 (Combating Trafficking in Counterfeit and Pirated Goods).

28. Defendants go to great lengths to conceal their identities and operate anonymously. Defendants use illusive tactics such as using multiple Defendant Aliases to register and operate

their networks of Defendant Internet Stores. Common tactics such as this enable Defendants to operate effectively ephemeral stores that can be erased in a moment's notice.

29. Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores. For example, some of the Defendant Internet Stores use identical or similar product photos or identical or equivalent language to sell Infringing/Counterfeit Products. A significant number of the Defendant Internet Stores include the same spelling mistakes throughout the listings of the Infringing/Counterfeit Products.

30. In addition, the Infringing/Counterfeit Products for sale in the Defendant Internet Stores bear similarities and indicia of being related to one another, suggesting that the Infringing Products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated.

31. On information and belief, Defendants communicate with each other and regularly participate in chat rooms (*i.e.* QQ.com) and online forums (*i.e.* sellerdefense.cn) regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

32. Counterfeiters such as Defendants, typically operate multiple credit card merchant accounts and payment service accounts behind layers of payment gateways so that they can continue operation notwithstanding enforcement efforts. Upon information and belief, counterfeiters, such as Defendants, maintain off-shore bank accounts and regularly move funds to evade enforcement of judgment.

33. On information and belief, Defendants are an interrelated group of counterfeiters working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Infringing Products in the same transaction, occurrence, or series of transactions or occurrences.

34. Defendants, without any authorization or license from Plaintiff, have knowingly and willfully used and continue to use and copy the Asserted Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Infringing/Counterfeit Products into the United States and Illinois over the Internet. Each Defendant Internet Store offers shipping to the United States, including to Illinois, and, on information and belief, each Defendant has offered to sell Infringing Products into the United States, including to Illinois.

35. Defendants' unauthorized use and counterfeiting of the Asserted Trademarks in connection with the advertising, distribution, offering for sale, and sale of Infringing Products, including the sale of Infringing Products into Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

36. Plaintiff repeats and incorporates by reference the allegations set forth in the preceding paragraphs.

37. Plaintiff is the exclusive owner of the Asserted Trademarks. The Trademark Registrations are valid, active, and in full force and effect. *See* **Exhibit 1**.

38. Defendants have sold, offered to sell, marketed, distributed and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit or infringing imitations of one or more of the Trademark Registrations in connection with infringing shirts without Plaintiff's permission or consent.

39. On information and belief, Defendants have knowledge of Plaintiff's rights in the Trademark Registrations and are willfully infringing and intentionally using counterfeits or infringements of one or more of the Trademark Registrations. Defendants' willful, intentional, and unauthorized use of one or more Trademark Registrations is likely to cause, has caused, and is

causing confusion, mistake, and deception as to the origin and quality of the counterfeit or infringing goods among the general public.

40. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

41. The injuries and damages sustained by Plaintiff have been directly and/or proximately caused by Defendants' wrongfully reproducing, using, offering for sale, selling, advertising, distributing, offering to sell, and/or selling the Infringing/Counterfeit Products.

42. Plaintiff has no adequate remedy at law, and if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its well-known and distinctive Registered Trademarks.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

43. Plaintiff repeats and incorporates by reference the allegations set forth in the preceding paragraphs.

44. Defendants' promotion, marketing, offering for sale, and/or sale of the Infringing/Counterfeit Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiff, or as to the origin, sponsorship, or approval of Defendants' Infringing/Counterfeit Products by Plaintiff.

45. By using one or more of the Registered Trademarks on the Infringing/Counterfeit Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Infringing/Counterfeit Products.

46. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Infringing/Counterfeit Products to the general public involves the use of

counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

47. Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of Plaintiff and the Asserted Trademarks.

## COUNT III
## VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
## (815 ILCS § 510, et seq.)

48. Plaintiff repeats and incorporates by reference the allegations set forth in the preceding paragraphs.

49. Defendants have engaged in acts violating Illinois law including, but not limited to, passing off their Infringing/Counterfeit Products as those of Plaintiff, causing a likelihood of confusion and/or misunderstanding as to the source, affiliation, connection, or association of their Infringing/Counterfeit Products with genuine products, representing that their Infringing/Counterfeit Products have Plaintiff's approval when they do not, and engaging in other conduct which creates a likelihood of confusion or misunderstanding among the relevant public.

50. The foregoing Defendants' acts constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, *et seq*.

51. Plaintiff has no adequate remedy at law, and Defendants' conduct has caused Plaintiff to suffer damage to its reputation and goodwill. Unless enjoined by the Court, Plaintiff will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be temporarily, preliminarily and permanently enjoined and restrained from:

a. using any Asserted Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, promotion, marketing, advertising, offering for sale, or sale of any product that is not an authentic Diesel Product or is not authorized by Plaintiff to be sold in connection with the Asserted Trademarks;

b. passing off, inducing, or enabling others to sell or pass off any products as authentic Diesel Products or any other products produced by Plaintiff that are not Plaintiff's, or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the Asserted Trademarks;

c. committing any acts calculated to cause consumers to believe that Defendants' Infringing/Counterfeit Diesel Products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

d. further infringing the Asserted Trademarks and damaging Plaintiff's goodwill; and

e. manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear any of Plaintiff's trademarks, including the Asserted Trademarks, or any reproductions, counterfeit copies, or colorable imitations thereof;

2) Entry of an Order that, upon Plaintiff's request, those with notice of the injunction, including, without limitation, that DHgate shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of

counterfeit and infringing goods using the Asserted Trademarks;

3) That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged and that the amount of damages for infringement of the Asserted Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4) In the alternative, that Plaintiff be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the Asserted Trademarks;

5) That Plaintiff be awarded its reasonable attorneys' fees and costs; and

6) Award any and all other relief that this Court deems just and proper.

Dated this the 19th day of September 2025.

Respectfully submitted,

*/s/ Joseph A. Meckes*
Joseph A. Meckes
joseph.meckes@squirepb.com
Squire Patton Boggs (US) LLP
555 California Street, Suite 550
San Francisco, California 94104
Phone: (415) 954-0200
Fax: (415) 393-9887

Christopher Lorenzo Lewis
chris.lewis@squirepb.com
Squire Patton Boggs (US) LLP
1000 Key Tower
127 Public Square
Cleveland, Ohio 44114
Phone: (216) 479-8500
Fax: (216) 479-8780

*Attorneys for Deisel S.p.A.*